MAVILLA BERRY vs. BOSTON & MAINE RAILROAD COMPANY.

York.    Opinion December 12, 1906.

*Accident without negligence.    No recovery in such case.*

The plaintiff was travelling along a highway when she discovered extending nearly across the road a locomotive upon the defendant's railroad. Finding that the locomotive obstructed so much of the highway that it was not safe to pass, she stopped some four hundred feet from the crossing and remained there ten or fifteen minutes. She then moved up to within three hundred and fifteen feet of the crossing and there waited a period of fifteen or twenty minutes more, until the sound of the whistle frightened her horse, and caused the injury of which she complains. The horse was frightened by four blasts of the whistle sounded for the pur pose of calling in the brakeman who had been sent out to flag the trains.

*Held:* (1) that under the circumstances of this case, it was not negligence on the part of the defendant to blow its whistle according to the rules and regulations governing the operation of its trains; (2) that the injuries received were due to one of that class of accidents that happen without the fault of any one.

On motion by defendant.    Sustained.    New trial granted.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant.

The plaintiff, accompanied by her mother, was driving a horse attached to a sleigh along a highway in the town of Buxton which crosses the defendant's tracks at grade near the station known as "Saco River." As the plaintiff approached the crossing she discovered extending nearly across the highway a locomotive and several freight cars upon the defendant's railroad, which made it unsafe to pass. The plaintiff stopped some four hundred feet from the crossing and remained there ten or fifteen minutes. She then moved up to within three hundred and fifteen feet of the crossing and there waited fifteen or twenty minutes more, until the whistle of the locomotive was sounded four times to call in the flagman who had been sent out to protect the train while doing its

work of shifting cars and handling freight. The horse being frightened by the whistle suddenly whirled around and threw the plaintiff and her mother from the sleigh and caused the injuries to the plaintiff for which this suit was brought.

Tried at the September term, 1905, of the Supreme Judicial Court, York County. Plea, the general issue. Verdict for plaintiff for $3,386.33. The defendant then filed a general motion for a new trial.

The case appears in the opinion.

*Cleaves, Waterhouse & Emery,* for plaintiff.

*George C. Yeaton,* for defendant.

SITTING : WISWELL, C. J., EMERY, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J. .This is an action in which the plaintiff recovered, against the Boston and Maine Railroad, a verdict for the sum of $3386.33 for the alleged negligence on the part of the servants of said defendant in sounding several unusual blasts of a steam whistle from one of the defendant's engines, thereby frightening the plaintiff's horse and causing the accident which produced the injuries complained of. The case comes here on motion by the defendant to set the verdict aside as against the law and the evidence.

The plaintiff's own statement of the case is as follows: "The evidence fairly warranted the jury in concluding that the plaintiff was lawfully upon this public way upon the day in question. That she was a woman of mature years, who had quite a portion of her life been accustomed to the use of horses and for quite a period of time had used this particular horse. That this animal was under all ordinary circumstances well behaved, having been used about the cars under all sorts of conditions and circumstances, driven through the public streets of Biddeford and Saco where the electric cars and automobiles were constantly being met with, and the experience of herself and others with this animal warranted her and them in concluding that this animal was unusually safe. The harness and sleigh were also in the best of condition. She therefore had no reason to

expect that this horse would be frightened by any ordinary noises such as might be expected in a public highway of our county and of this particular vicinity. Travelling with her mother along a highway in Buxton, she sees extending nearly across the track a locomotive upon the defendant's railroad. Finding that this locomotive obstructed so much of the highway that it was not safe to pass, this plaintiff stopped some four hundred feet away from the crossing and remained there ten or fifteen minutes, at the end of which time she moved up to within three hundred and fifteen feet of the crossing, and there waited a period of fifteen or twenty minutes, until the sound of the whistle frightened her horse and the accident and injury to the plaintiff resulted. Now then was this plaintiff negligent?"

Under the plaintiff's own statement of facts and the evidence in the case, it may be equally pertinent to ask, was this defendant negligent? We have read the testimony carefully and our conclusion is that neither party could properly be charged with negligence. On the evidence it appears that the plaintiff had perfect confidence in the kindness and training of her horse to withstand any of the motions or noises connected with the operation of a train three hundred and fifteen feet or one hundred and five yards away. Such reliance did she place in his docility that she had moved one hundred feet nearer the train than she had been.

If she thus manifested such confidence in the disposition of her horse as to move up nearer the train and there wait for its passage over the crossing, we see no reason why, assuming that the engineer saw the team, he should not have been privileged to place equal confidence in the reliability of the horse with respect to fear of the cars. We think he should, and had a right to infer, even if he saw the plaintiff all the time, that she had halted her horse within what she regarded as a perfectly safe distance from the train. One hundred and five yards is a long distance, and we are unprepared to say that a railroad shall be held to anticipate that the blowing of a whistle, in accordance with the rules and regulations of operating its road, is calculated to frighten an apparently kind and well behaved horse at such a distance.

Our conclusion is that the injuries received were due to one of

that class of accidents that happen without the fault of any one. The plaintiff undoubtedly thought her horse was kind and all right to stand where he was without danger of fright from any of the ordinary noises in the operation of trains. The engineer if he saw the horse had a right to presume the same, and, in view of this right, did what he was authorized to do by the rules and regulations of the road, blew the regular steam whistle attached to his engine four times to call in the man who had been sent out to flag the trains. Taking into consideration the distance of the plaintiff from the train, we are unable to discover any negligence in this act.

Some evidence has been introduced tending to show that this particular whistle was sharper and shriller than some other whistles used upon the engines operated upon this road; but even if this is so, it does not charge the act of the defendant with negligence. It cannot be expected that the various whistles used upon different engines would produce a tone of the same pitch, quality and loudness. Some would necessarily be sharper, and some louder, than others; but unless there is such a distinction in the volume of sound as to clearly differentiate this particular whistle from the others, thereby making it a cause of fright which could not have been reasonably anticipated by the plaintiff, the defendant cannot be charged with negligence for using it. That some whistles are louder than others is a matter of common knowledge of which the plaintiff was as much bound to take notice as the defendant, itself. The evidence in this case does not show that the whistle which frightened the horse was of the unusual character above described. Some witnesses say that it was a shrill whistle but they had heard others as shrill. Others that it was sharp. But no one testifies that the whistle was sharper than they had ever heard before. The usual whistle does not attract attention, but four distinct blasts would and, by way of contrast, naturally convey the impression of sharpness.

There must be some limit with respect to the relative location of a train and team, where the train can blow its whistle without danger of incurring legal liability for frightening the team. While ordinarily this distance is a question of fact, taken in connection with all the other circumstances, we are nevertheless convinced that three

hundred and fifteen feet, considered in connection with the circumstances in this case, is beyond the limit. We are unable to find any decided case that holds a railroad responsible for frightening a horse by the blowing of a whistle at such a distance or approximating it. We think the verdict was clearly wrong.

*Verdict set aside.*
*New trial granted.*